Good morning, your honors. May it please the court, David Ryan on behalf of the United States. I'll aim to reserve two minutes for rebuttal, and I'd like to begin with the suppression issue unless the court would prefer me to do otherwise. The district court correctly held that officers in this case did not exceed the scope of the search warrant when they entered the auto shop that the defendant used to sell drugs and then searched a back room that he used to store the drugs. I'd like to highlight three facts in the record that demonstrate just how integrated these two rooms had become. First, the Riverside City Code Enforcement actually cited the building about a week after the search for making, quote, interior alterations, including, quote, combining units 114 and unit 106. In other words, the City Code Enforcement section found exactly what the officers saw, which is that the defendant had combined the two units into one. Second... So why is that significant? Because... We look at this, don't we look at this from the perspective of the officers when they were in there implementing their search warrant? Well, I think the first thing that the court looks at is whether, on an objective analysis, the search warrant's plain terms cover the back room, the storage room. Then, if the court were to conclude it didn't, then I think the court would look to whether the officers reasonably believed that it did. But I think the district court held both in the alternative. Both that the back room was covered by the warrant, and alternatively, even if it were not, the officers reasonably believed it was based on their surveillance and what they saw during their safety sweep. And I think both of those holdings are supported by the record. The second fact that shows that not only... So you're not relying on the storage room aspect? I think we are relying on the storage room. I think the reason why the district court correctly held that the storage room was part of and a storage room for the front unit is based on how the defendant had combined the units into one. So the drugs being stored in the back were to be sold out of the front. At one point, I want to make sure is clear from the record is there's a diagram at supplemental excerpts of Record 90 that shows all the interior alterations that the defendant had made to these two units. And what it shows is the rooms where the drugs were found were actually in secret closets that straddled the space between what was once the front unit and once the back unit, but had become combined into one interconnected space. In other words, the drugs were not found in the back unit or the front unit. They were in secret rooms that literally straddled the two, but could only be accessed through concealed passageways the defendant had built. The third fact that I think I would like to point out is the items found in the back unit revealed its true purpose, which was to store the drugs being sold out of the front. These were the back door, the exterior door to the back unit was locked from the inside. The numbers on the outside were painted white. So this back unit was not accessible other than through the entrance to the front unit. But the officers didn't know that at the time they executed the search, correct? That's correct. We can't really consider those facts, can we? I think that the court can consider those facts when considering whether as an objective matter the back unit was covered by the terms of the warrant. I think that question is not based on what the officers knew at the time, but rather based on an objective assessment of the layout of the room. But do you have any case law that says when making that assessment we can look to what was discovered after the fact? I'm just not aware of any cases that say what the officers did was okay because after the fact we figured out all these things, so therefore it was okay. I mean, I think your strongest case is what they knew at the time as opposed to saying, well, and it turns out that this room when they searched it backed up their theory of the case. I think with respect to what the officers reasonably believed under the garrison good faith exception analysis, I completely agree it's what the officers knew at the time. With respect to whether the room simply is the room that was in the warrant, I don't believe the cases say that's based on what the officers knew. That's based on looking at the facts that actually existed. But I don't disagree that I think the strongest argument is certainly that at the very least the officers reasonably believed based on everything they saw that this was one interconnected space. Their surveillance had indicated it was going to be a large continuous space from the front of the building to the back. When they went in, they found this very small space that did not match everything they had learned up to that point. And they quite quickly found what they had expected to find, which were concealed passageways and hidden walls and secret compartments. That led to a storage room. Before they executed the search warrant, they had surveyed the entire facility, correct? Yes, Your Honor. And they were aware that on the south side there were garage doors and regular doors to enter the businesses on the back side, is that correct? That's correct, Your Honor. They were aware that at other sections of the back side, the south side, so units 108 or 110, had marked doors and roll-up garage doors to go in. And they were aware that there was a roll-up door between 108 and 110? Correct. That's correct. But they were also aware that, number one, based on their surveillance, the drug operation appeared to go from the front entrance to 114 all the way to the back. And number two, that although they saw some numbers to the left and to the right, they saw no numbers for a suite in the spot they were looking at. But by the time they executed the search warrant, though, they didn't place any officers in the back. So that's correct that it's not in the record whether they did place officers in the back during the time they executed the search warrant. It is in the record that they surveilled the back or at least attempted to surveil the back and had difficulty doing so because of concerns about being found out doing that. They had to surveil the back from across the street in the car. Right. It's also in the record from the photos that the defendant put in that even had they surveilled the back from far closer, they would not have seen the numbers one of six.  But when they actually executed the search warrant, they didn't place any officers in the back. That's correct. And I think the basis for that, as I can tell in the record, is that they'd seen no activity in the back. And the only way to get to the back, as I understand it from the record, is to go around through the front. So when they executed the search warrant, they went in through the front and they attempted to secure the location that way. They cleared all the people out. It is pointed out in the warrant affidavit as well that in multiple places where the officer believed that he had seen customers entering through the front and had not seen activity in the back of the unit. So I don't think the officers had a basis to believe that the back was being used for any purpose. The third item I would point out that what officers did find in the back unit on their initial safety sweep that further confirmed that the back unit was purely a storage room for the front was the television screen showing surveillance of the cars and customers entering the front of the front unit, as well as the fact that in addition to the three-foot hole, which was the only way to access the back unit, the three-foot hole between the front and the back, there was a recently painted section of drywall in the shape of a door, indicating that not only had there been the three-foot hole, but a door between the two adjoining units had recently been sealed up. Now, could they see that recently sealed-up space from inside the front part? No, I don't believe so. I certainly don't believe that's indicated in the record, the photographs of that door. Which side of the wall was the painted-up door? Inside of the back room. I would like to reserve two minutes, if Your Honors. Okay. That's fine. Thank you. Good morning. May it please the Court, I'm James Laughlin on behalf of the appellee and cross-appellant, Marcos Gonzalez-Flores. I'm happy to answer any questions the Court has about the sentencing appeal issue, but it seems like the Court's focused on suppression, so I'll deal with that unless the Court wants me to do otherwise. And given that I'm the appellant on this, I know this sounds kind of strange, but I would like to have the last word. If I could save one minute of my time for rebuttal at the end, I'd appreciate that. Government counsel and I agree on one thing now. The briefs were a little bit fuzzy about what you consider in the first instance to find out whether there was a violation of the Fourth Amendment. They blended what the officers believed with what the text of the warrant said, and now I think they're acknowledging that the first step is only based on the text of the warrant and the objective's physical characteristics of the space. And based on that alone, the Court- When they went in or what they knew? No, I think all that goes to the second question, which is whether they made a reasonable mistake. But the initial question about what was covered by the warrant is the plain text of the warrant and what we objectively know about the space. And here we know that the warrant covered only Suite 114 and that there were, in fact, two suites, Suite 114 and 106. It had separate leases, separate entrances from the outside, and I think that settles the matter. Counsel, the warrant says storage rooms for Suite 114, correct? Correct. So that's their hook. Their hook is that this is a storage room. And again, I want to separate out the objective question of whether this can objectively be characterized as a storage room and then the second question about whether or not they could reasonably believe it was a storage room. I think objectively you cannot call this a storage room. What was inside that room was a space that was as big, if not bigger, than the 114, the body shop out front. It was a completely separate body shop. You see, there's 30 different cars in there, and there's also, as the government points out, there is a drug weighing station apparently and a surveillance station. So if a storage room is something that's reasonably defined as something that is for the primary or exclusive use of storage, it wasn't that, even if you consider what they found inside. I thought these were sort of cars that were in need of repair. Correct. There was a separate auto business going out of Suite 106. But he ran a car repair shop in the front, correct? Correct. Correct. And I think that it's helpful to think of it. Well, is it inferring too much that an auto repair business might have old cars around the property? Well, but here's the thing. Here's what the government forgot to mention when they said they looked in there, and the only access to this place was a three-foot hole. How did 30 cars get through a three-foot hole? As soon as you look at that, you know, oh, this is a separate unit that has its own egress and ingress points. In fact, they did purportedly do some surveillance to the back where they saw the back doors. Apparently not very interested in it because there's no evidence in the reports or very much in the declarations about what they found back there. They spent a lot of time back there. But I think what's even more telling is if you look at page 81 of the Supplemental Actions of Record, where they're describing the property to be seized and they're describing 114, they say 114 has two doors, a garage door and a pedestrian door, facing front. If they were thinking that this was some place that went all the way to the back and they already knew that there were two more doors in the back, that would have reasonably made it into their description. Counsel, let me ask you this. If there were, when they entered Suite 114, if there was a sign on the wall that said storage room and had an arrow pointing down to the hole, could they infer that was a storage room then? I would say that that would be factored into the balance of all the factors that were known as to whether that would be either an objective way to characterize the room in the first place or a reasonable mistake in belief in the second place. But let me ask you that. If that's the case then, couldn't the officers infer that a hole in the wall that is designed for people to crawl through that is hidden by a fan, couldn't they infer that that is the same as something being labeled a storage room for 114? No, not based on what they, the evidence of the record is, the officers, as soon as he looked through, he saw a large warehouse with many, many cars. Right, but what other purpose is there for a hole in the wall hidden by a fan? No, clearly there was some reason they wanted to have this clandestine access between the rooms, but that doesn't convert the nature of the room that's on the other side. If I can use an example, let's say officers got a warrant to search courtroom three. They come in here and they find a three-foot hole over there. They look through. They see another bench. They see another podium, council tables, and more spectator seating. Is it reasonable for them to say, oh, that must be part of courtroom three, or do they go, oh, that's in a completely different courtroom? Well, I don't know if storage units and suites and courtrooms can be analogized that way. No, but auto shops can. And I think as soon as they look through, they were inside of an auto shop. Again, it's part of a multi-unit complex. They're inside of an auto shop. They look through, and they see what can only be reasonably described as another auto shop. And see, this is where I think the Second Circuit cases I cited come into play, versus Saniok and Berchanski, where what reasonably happened was the officers realized at that point there was another unit there, but that's probably where the evidence we want is. And what the Second Circuit said, and actually Garrison as well, that's when you step back and stop, say, let's put everything on hold, place a couple of phone calls, get another warrant, then we search. Counsel, the search warrant also says the surrounding grounds and any garages attached or detached, storage rooms, et cetera. Does that help us in any way? No, Your Honor. I did address both the surrounding ground and garages language in my brief. The government did not respond, and I believe under the court's case law, it has therefore waived any reliance on the surrounding grounds and garages. But even if the court reached it anyway, it's no more a garage. That suite 106 is no more a garage of suite 214 than it is a storage room of 214. And by the same token, I don't think there's any plausible reading that you could say that this was on surrounding grounds because it's all part of one commercial building, one next to the other. It's not natural to say that one unit is on the grounds of the other. They're just separate units. Do you want to deal with the sentencing issue? Are you conceding the government's position is right on the sentencing or not? I'm conceding that there was a requirement to impose a consecutive sentence. But this court frequently does not consider viable defense sentencing issues when a defendant files a late notice of appeal, when his plea agreement includes a waiver that precludes those things. And I don't think the court should be any less diligent enforcing those rules against the government. And in particular, I would like to say with regard to the 3247 requirement, about 10 years ago in a case called Wayshaw, the court said, we're taking this requirement seriously, and if the defendant objects, the government has to come forward with the documentation showing that the person who supposedly approved the appeal actually did so. And we came forward and we cited that case and we said, it's the government's obligation now to produce documentation. And what they did is in their last brief, they cite a bunch of facts about Jeffrey Wall being a principal deputy solicitor general, and then at some point in a particular day he became the acting. There's no factual support. They don't cite articles or anything about that. That's not documentation to meet their burden to prove that. And I think that in the Wayshaw case, the court said, we're not going to be so forgiving about this in the future. Present the documentation when it's needed. And I think that unless the court takes the opportunity in this case to dismiss the appeal as a sanction for not complying with that, they're going to continue to snub the noses at this requirement. If I can have one minute for rebuttal, I'd appreciate it. On the suppression? On the suppression, yes. Thank you, Your Honors. I'd like to make three points, two on the suppression issue. One is the good faith of the officers in their reasonable belief that the back room was a storage room. It's not just the three-by-three-foot hole that they saw. It's also, number one, what they knew from their surveillance going into that day, which led to their expectation that the auto shop, the purported auto shop, would run all the way to the back of the building, as well as the business records that showed that the auto shop only leased one unit, and their conclusion, therefore, that that one unit likewise ran all the way to the back of the building. And then it's also their observations during their initial safety sweep of the back room. So once they went through the back hole, once they went through the hole into the back room, everything they saw confirmed their belief that this back room was a storage room for the front. So they didn't just find cars. They found, again, multiple drug packaging stations. They found that the room was locked from the inside. So, yes, there was an exterior door, but the only way to open it was if you first went in the front room. And then they found the recently sealed door between the two rooms. So what they saw on the safety sweep confirmed what they already reasonably believed. The point on the acting solicitor general, the government, in footnote six of our third brief on cross-appeal, addressed that issue and indicated that if the court required or wished to see further evidence, that the government would provide it. Unless the court has additional questions, the government will submit. Thank you. Only on the suppression issue. Understood. I think the government just helped make a point for me because as describing what the officers found inside room 106, it's even if you can ignore the fact that because of the leases and the structure of the building and everything else, these are just separate units. One cannot be a storeroom or the other. The way it was being used, even though earlier in the first part of their argument, they tried to say it was a place to store the drugs. But they acknowledge here that based on their theory, this is where the bulk of the drug activity was going on. You can't even describe it as a storeroom to store drugs. It was where an activity occurred. And then with regard to the protective sweep, and I've asked if the court doesn't grant our motion outright, I've asked for an evidentiary hearing. And I think this is particularly where hearings are particularly important because the government keeps throwing out this protective sweep stuff, as they did below. They've never made an effort to actually meet the criteria of a protective sweep, let alone say at each stage of the sweep, here's what we knew, which is all that minutiae is very relevant under garrison to when the search should have stopped and when they should have gotten another warrant. Okay. Thank you. Thank you, Mr. Brown. Okay. Thank you, counsel. The matter is submitted at this time.
judges: O'scannlain, Paez, Owens